IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| CYNTHIA K. SUNDY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 07-5069-CV-SW-ODS ) |
| RENEWABLE ENVIRONMENTAL SOLUTIONS, L.L.C., et al., | ) ) ) |
| Defendants. | ) ) |

ORDER AND OPINION GRANTING PLAINTIFF'S MOTION TO REMAND

Pending is Plaintiff's Motion to Remand. The Court concludes (1) Defendants have not demonstrated federal jurisdiction exists and (2) even if jurisdiction exists, the case should be remanded pursuant to 28 U.S.C. § 1332(d)(4).

I. BACKGROUND

The critical issue is whether Defendant Renewable Environmental Solutions, L.L.C. ("RES") is a citizen of Missouri within the meaning of the Class Action Fairness Act ("CAFA"). RES is a limited liability company formed under the laws of Delaware. RES alleges it is owned by Resource Recovery Corporation ("RRC"), and RRC is, in turn, owned by Changing World Technologies, Inc. ("CWT"). Both RRC and CWT are based in New York. These companies (along with another company owned by CWT) combined to obtain licenses and technical knowledge to implement a process for converting agricultural waste into renewable fuel and other products. RES has its offices in New York, where all of its decisions are made and its books and records are maintained. Notice of Removal, ¶¶ 14-15.

RES was originally a joint venture between ConAgra Foods, Inc. and RRC, and its headquarters were originally located in Illinois within ConAgra's offices. In July 2005,

ConAgra sold its stake in RES to RRC, and RES' offices moved to New York. Appel Declaration, ¶¶ 2, 4-7.[1]

RES has one plant, and it is located near Carthage, Missouri. Construction began in 2002, and it began operating in April 2003. Appel Declaration, ¶ 14. RES plans – as it has since its formation – to construct plants in other places around the country but has not yet done so. Appel Declaration, ¶ 17.

Plaintiff filed suit on behalf of herself and a putative class. The tentative class definition consists of "[a]ll persons who, from April 31, 2003 to the date of certification, own or occupy, or owned or occupied, residential property" in a defined area near RES' facility. Complaint, ¶ 18. She alleges the facility emits an odor (due to its daily receipt and use of 200 to 500 tons of turkey offal) that, to put it simply, is offensive and noxious. Complaint, ¶¶ 11-17. In addition to RES, the defendants include (1) Don Sanders, the facility's manager, and (2) Fictitious Defendants AA through ZZ, who are identified as individuals, entities, etc. who may also be contributing the contamination. Complaint, ¶ 4. Defendants removed the case, alleging jurisdiction exists pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

## II. DISCUSSION

Defendants are invoking federal jurisdiction, so they bear the burden of demonstrating jurisdiction exists. See Smith v. Nationwide Property & Casualty Ins. Co., No. 07-5956, slip op. at ___ (6th Cir. Oct. 1, 2007) (holding, and citing cases holding, that CAFA does not shift burden of demonstrating existence of federal jurisdiction to plaintiffs in removal cases); Evans v. Walter Indus., 449 F.3d 1159, 1164 (11th Cir. 2006). Once jurisdiction is established, however, the party seeking remand

---

[1]Brian Appel, RES' President, also identifies RES' "principle place of business" at various times. The location of an organization's principle place of business is a legal conclusion to be drawn from the facts, so Mr. Appel's statements in this regard have not been relied upon by the Court. Cf. Capitol Indemnity Corp. v. Russellville Steel Co., 367 F.3d 831, 836 (8th Cir. 2004).

due to one of CAFA's exceptions bears the burden of demonstrating that the exception should be applied.  E.g., id.

### A.  Jurisdiction Under CAFA

The case is a "class action" as defined in section 1332(d)(1)(B).  Thus, the Court has jurisdiction if the amount in controversy exceeds $5 million and "any member of [the class] is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  The amount in controversy exceeds $5 million, leaving for discussion the issue of citizenship.

For CAFA's purposes, RES[2] is deemed "a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10).  At a minimum, then, RES is a citizen of Delaware because it was organized under that state's laws.

The Eighth Circuit has endorsed the "total activity test" for determining an organization's principal place of business.  "The total activity test recognizes that the nature of a corporation's activities will impact the relative importance of production activities, service activities, and corporate decision making.  Accordingly, the total activity test looks at all corporate activities."  Capitol Indemnity Corp. v. Russellville Steel Co., 367 F.3d 831, 836 (8th Cir. 2004).  In reaching this decision, the Court of Appeals cited a decision from the Fifth Circuit (among others) approvingly, so that decision is instructive in describing and applying the test's contours.

The Fifth Circuit described the total activity test as incorporating and including other tests commonly used for this inquiry and established certain general principles:

> (1) when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business; (2) when a corporation has its sole operation in one state and executive offices in another, the place of activity is

---

[2]The only other defendant named, Don Sanders, is conceded to be a citizen of Missouri.

3

> regarded as more significant; but (3) when the activity of a corporation is passive and the 'brain' of the corporation is in another state, the situs of the corporation's 'brain' is given greater significance.

J.A. Olson Co. v. City of Winona, 818 F.2d 401, 411 (8th Cir. 1987) (internal citations omitted). These guidelines "are only a starting point. In each case we must fully examine the corporation's operations and its nerve center in the context of the organization of that business." Id.

> In evaluating the 'activity' of the corporation in question, one factor we must consider is the nature of the activity: whether it is active or passive and whether it is labor intensive or management demanding. . . . Furthermore, we consider the importance of the particular activity to the corporate purpose and to the corporation as a whole; significant indicators of an activity's importance include the proportionate share of corporate assets, both of money and time, devoted to the activity and the proportion of its income that the corporation derives from that activity.

Id. Finally, and as is particularly relevant in this case, "[w]e also see as significant the degree to which the corporation's activities bring it into contact with the community." Id. Ultimately, an entity's principal place of business is primarily a question of fact. Capitol Indemnity Corp., 367 F.3d at 834.

Defendants emphasize a variety of factors that do not have any bearing on the matter. For instance, RES notes Missourians were not involved in its formation. This may be, but it has nothing to do with where RES conducts its business. Similarly, the fact that those who formed RES conduct significant amounts of business outside Missouri does not have much bearing on where RES conducts its business. Finally, the fact that Missouri offered no incentives or particular benefit for constructing and operating its Carthage facility does not obviate the fact that the facility is in Carthage.[3]

---

[3] At times, it appears as if Defendants are attempting to portray this case as the kind of case Congress intended to target with CAFA; that is, a case having a significant effect on interstate commerce. E.g., Lowery v. Alabama Power Co., 483 F.3d 1184, 1197 (11th Cir. 2007) (CAFA intended to expand diversity jurisdiction "to provide for more uniform federal disposition of class actions affecting interstate commerce."). Of course, the significant question is whether this case fits within CAFA's definitions, not

4

The total activity test's initial guiding principle points to Missouri as RES' principal place of business. Its headquarters are located outside Missouri, but all of its operations occur at its sole facility, located in Missouri. Defendants contend this fact should be overlooked because the facility is not profitable, but profitability is not particularly relevant. RES has one place of operations – its Carthage facility. While some cases have observed that a corporation earned its profits from a particular location, this fact is not dispositive. It is equally relevant that a company's revenues come from a particular location, even if it turns out that the corporation is not profitable. In other words, the total activity test does not dictate different outcomes for profitable and unprofitable organizations.

RES also emphasizes that nothing in its business plan requires it to have a facility in Missouri, and that it ultimately plans to have facilities in other places. When that day comes, and when its operations may be accurately described as "far-flung and varied," it may be determined that RES' principle place of business is not Missouri. At the present, however, RES has one operating facility, and it is located in Missouri. Future expansion plans do not affect or dictate RES' present place of business.

Finally, the Court finds the nature and degree of RES activities have brought it into significant contact with Missouri. Bank accounts and financial decisions may be made in New York, but the actual performance of its operations – utilizing technology to transform waste into useful products – occurs only in Missouri. Presumably, it employs a significant number of employees in Missouri – more than it employs in New York. This is where it produces the product that it sells, performs its contracts, and generates its revenues. The Court concludes RES' principal place of business is in Missouri.

---

whether removal would satisfy Congress' purposes in enacting CAFA. In any event, Congress' concern did not extend broadly to any class action against any business operating in interstate commerce, and this case lacks the potential impact on interstate commerce that concerned Congress. This case will not, for instance, establish some requirement for a product sold in interstate commerce, or affect activities that cross state lines. This case only addresses activities happening in and around Carthage, Missouri, and will not affect the operations of other facilities, be they RES' or someone else's.

Having established RES' citizenship, the Court must determine whether RES has demonstrated the minimal diversity required by CAFA. This requirement is satisfied if there is at least one member of the class who is not a citizen of either Missouri or Delaware.[4] Defendants invite the Court to assume there must be such a person, reasoning that the class definition is broad enough to include people who lived in Carthage after April 31, 2003, but who since left and established citizenship in another state. Unfortunately, RES has not demonstrated there are any such people. Defendants have presented evidence suggesting some members of the class moved out of *Carthage*, but this does not justify a finding that any of those people also moved out of *Missouri*. It would be inappropriate for the Court to simply speculate there must be such a person. Defendants have failed to sustain their burden of demonstrating there is a member of the class who is neither a citizen of Missouri nor a citizen of Delaware, and have therefore failed to demonstrate federal jurisdiction exists.

### B. CAFA's Exceptions to Jurisdiction

Even if the Court has jurisdiction under section 1332(d)(2), the Court would lose that jurisdiction under the "home state exception" to CAFA jurisdiction. Section 1332(d)(4)(B) directs that jurisdiction be declined if "two-thirds or more of the members of [the class], and the prmary defendants, are citizens of the State in which the action as originally filed." Defendants concede that at least two-thirds of the class consists of Missouri citizens. Defendants' Suggestions in Opposition at 10. The Court has already concluded RES (the primary defendant in this case) is a citizen of Missouri. Admittedly,

---

[4] The Court does not agree with Defendants' suggestion that minimal diversity exists unless a member of the class is a citizen of *both* Missouri *and* Delaware. For support, RES relies on dicta from the Supreme Court's opinion in Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 578 n.6 (2004). In addition to being dicta, that passage acknowledged this proposition was "possible, though far from clear," did not reference any supporting authority, and noted the existence of contrary authority. For these reasons, the Court declines to adopt Defendants' formulation as a correct statement of law.

6

this conclusion was drawn as part of an analysis in which Defendants bore the burden. However, even when Plaintiff is assigned the burden of demonstrating RES' citizenship, the Court finds itself coming to the same conclusion it did previously: RES' principal place of business is in Missouri. Therefore, section 1332(d)(4)(B) dictates that jurisdiction be declined.[5]

### III. CONCLUSION

For the foregoing reasons, the Motion to Remand (Doc. # 9) is granted and this case is remanded to the Circuit Court for Jasper County, Missouri.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: October 10, 2007     UNITED STATES DISTRICT COURT

---

[5] The Court also concludes section 1332(d)(4)(A) (the local controversy exception) dictates that jurisdiction be declined. At least one defendant –RES – is a citizen of Missouri and its conduct forms a significant basis for the claims asserted and against whom significant relief is sought. 28 U.S.C. § 1332(d)(4)(A)(i)(II). The principal injuries resulting from that conduct also occurred in Missouri. Id. § 1332(d)(4)(A)(i)(III). There is no need to consider the "interest of justice" exception because Defendants concede more than two-thirds of the class' members are Missouri citizens. See 28 U.S.C. § 1332(d)(3) (interest of justice exception applies if "greater than one-third but less than two-thirds of the members" of the class and the primary defendant are citizens of the State where the case was filed).

7